F.# 2015R00932

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (516) 218-7004 | **Filed Under Seal**<br><br>APPLICATION FOR A SEARCH WARRANT FOR PROSPECTIVE CELL-SITE INFORMATION<br><br>Case No. 16-1316 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT FOR PROSPECTIVE CELL-SITE INFORMATION

I, BRIAN G. GANDER, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (516) 218-7004 (the "Target Cell Phone"), whose service provider is Onvoy, LLC-MN, a wireless telephone service provider headquartered at 10300 Sixth Avenue North, Plymouth MN 55441. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Federal Bureau of Information, and have been for approximately 13 years. During my tenure as a Special Agent with the FBI, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to, sex trafficking, alien harboring, violations of the Mann Act, violations of the Travel Act, and money laundering, in violation of Title 18, United States Code, Sections 371, 1591, 1594, 1952, 1956,

2421, and 2423. During these investigations, I have executed, or participated in the execution of, numerous search warrants involving phones and cellphone location technology.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that sex trafficking, Mann Act violations, Travel Act violations, and conspiracy to do the same, in violation of 18 U.S.C. §§ 371, 1591, 1594, 1952, and 2421 (the "Subject Offenses"), have been committed, are being committed, and will be committed by FNU LNU, and others known and unknown. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

5. Based on my training and experience, I am familiar with the dynamics commonly involved in domestic sex trafficking, in which traffickers and their adult and minor victims typically are United States nationals. I am also familiar with the means and methods typically used by such sex traffickers.

6. Such sex traffickers typically recruit vulnerable minor victims who lack education, a stable home, family support, and who have suffered past physical and emotional trauma. Sex traffickers often exploit their minor victims' need for shelter, stability, and affection as a means to sexually exploit their victims for their own financial gain. Similarly, such sex

traffickers or pimps often prey on young adult women who suffer many of the same vulnerabilities.

7. Once domestic sex traffickers have recruited their victims, they typically advertise them on websites dedicated to "escort" services and on classifieds websites such as Backpage.com ("Backpage").

8. I know that Backpage is a classifieds website that, among other things, is commonly used by sex traffickers and others to advertise women, men, girls, and boys for commercial sex. To evade detection by law enforcement, such advertisements are posted in the adult entertainment section of Backpage and purport to be offering individuals as mere escorts. Such advertisements, however, will often signal that they are, in fact, offering individuals for sale for commercial sex acts through a variety of cues, including pictures of scantily-clad women and minor girls in sexually provocative poses, with coded language indicating that the people being offered will perform commercial sex acts. I also know that Backpage advertisements for minor girls typically do not show the faces of the minor in the advertisement. These Backpage advertisements typically contain a callback phone number that potential customers may text or call in order to respond to the advertisement and set up an appointment for commercial sex. To prevent Backpage from screening an advertisement offering a minor for sale for commercial sex, domestic sex traffickers ensure that the advertisement displays an age of 18 or older for the person being offered for sale, otherwise Backpage would refuse to publish the advertisement. Backpage advertisements cannot be posted without the poster providing a working email address.

9. It is also common for domestic sex traffickers to set rules for their victims, control their actions, and take their earnings. Often, if a victim violates one of the rules set by a sex

trafficker, punishment is meted out in the form of physical violence. A violation of the rules could include, among other things, failing to answer the traffickers' phone calls, leaving the area where the victim is supposed to be soliciting or servicing customers, not making enough money for the day, or holding back money from the sex trafficker.

10. Domestic sex traffickers typically offer their victims for sale in apartments or houses and in motels. They often provide their victims with cell phones or mobile device to use to answer calls from potential customers, and often communicate with their victims by cell phone or mobile device. Advertisements on Backpage and other websites are typically posted via cell phone or mobile device (either from the traffickers' phones, or from the victims' phones at the traffickers' direction). Customers typically pay in cash. All or most of the victims' earnings from engaging in commercial sex are then taken by the traffickers.

11. Domestic sex traffickers and pimps commonly designate one or a few individuals, depending on the size of the trafficker's operation, to manage the trafficker's criminal enterprise or "stable" of victims engaging in commercial sex acts. This individual is usually a woman and is referred to as the trafficker's "bottom." The responsibilities of the bottom include overseeing and training new women and girls working engaging in commercial sex and reporting their disobedience to the trafficker.

### The Instant Sex Trafficking Investigation

12. I am one of the FBI agents with primary responsibility for the investigation of this case. Based on my involvement in this investigation, my training and experience, my review of documents and records, and my conversations with law enforcement agents and others, I have learned the following, among other things, in substance and in part.

13. Based on interviews of an individual ("Victim-1"), who worked in prostitution in New York in or about 2015, conversations with other law enforcement officers, and my review of records and documents, I know the following:

      a. In or about 2015, Victim-1 was invited to live with a friend ("CC-1") in New York, and, per this invitation, Victim-1 traveled from out of state to New York, New York, in or about 2015. Upon arriving in New York, Victim-1 stayed with CC-1 for a short period of time, after which point CC-1 required Victim-1 to leave CC-1's residence ("Residence-1"). Having limited ties and connections to New York, Victim-1 remained in the vicinity of Residence-1 and, later that day, another individual ("CC-2") approached Victim-1 and offered Victim-1 a place to stay, in the residence of a third individual ("CC-3"). Victim-1 then stayed with CC-3 in CC-3's residence ("Residence-2"). Victim-1 later learned that CC-1, CC-2, and CC-3 were all acquainted.

      b. After staying at Residence-2 with CC-3 for a few days, CC-3 told Victim-1, in sum and substance, that Victim-1 had to engage in prostitution to get money for CC-3. Victim-1 believed that if she did not comply with CC-3's request, Victim-1 would be harmed. At CC-3's request and direction, Victim-1 then engaged in sexual acts in exchange for money.

      c. Victim-1 was then introduced to another individual ("CC-4") who took Victim-1 to various areas, by car, including areas in Yonkers, Queens, Brooklyn, and White Plains, New York. In these areas or "tracks" (streets where prostitution is common), Victim-1 engaged in prostitution. CC-4 monitored Victim-1 while she engaged in prostitution on the track. CC-4 directed Victim-1 with respect to, among other things, what prices to charge for certain sexual acts. CC-4 permitted Victim-1 to keep a fraction of the money earned from these

commercial sexual acts; the remaining proceeds were divided between at least CC-3 and CC-4.

    d.  In or about 2015, Victim-1 (who was an adult at the time) met another individual, who has been identified as WAYNE MCFARLANE a/k/a "Dwayne McFarlane." MCFARLANE is one of the target subjects of this investigation. MCFARLANE was a customer of Victim-1. MCFARLANE told Victim-1, in sum and substance, that Victim-1 should work in prostitution for MCFARLANE and that MCFARLANE would take better care of Victim-1 than CC-4. MCFARLANE and Victim-1 arranged for MCFARLANE to transport Victim-1 away from CC-4 and to MCFARLANE's residence ("Residence-3").

    e.  Once at MCFARLANE's residence, Victim-1 met at least four other individuals who were also working in prostitution for MCFARLANE — who were, colloquially referred to as MCFARLANE's "girls," or part of MCFARLANE's "stable." Victim-1 met an individual ("CC-6") who shared a room with Victim-1 at Residence-3. CC-6 has been identified as SAMANTHA MCMULLAN, a/k/a "Samantha Nijjar," a/k/a "Sommer," a/k/a "Star." MCMULLAN is also one of the target subjects of this investigation. During the course of Victim-1's stay at Residence-3 and her work for MCFARLANE, Victim-1 was almost always accompanied by one of MCFARLANE's "girls," usually MCMULLAN.

    f.  MCFARLANE took photographs of Victim-1 and posted these photographs in advertisements for prostitution on Backpage.

    g.  In or about 2015, Victim-1 engaged in prostitution from Residence-3 and from hotel rooms. Some of Victim-1's customers contacted Victim-1 through the advertisements MCFARLANE placed online.

  14.  Based on a review of cellphone records and online advertisements for prostitution placed on the website Backpage, I know the following:

6

    a. Victim-1's photographs appeared in advertisements for prostitution placed on Backpage.

    b. Law enforcement agents obtained MCMULLAN's cellphone number from Victim-1. Thus far, law enforcement agents have used MCMULLAN's cellphone number to trace at least 35 other individuals, primarily females, across the country for whom online advertisements have been posted for prostitution. Some of the photographs of these individuals contained in these advertisements share distinct backgrounds identified by Victim-1 to be located in Residence-3.

    c. The individuals depicted in these online advertisements are, according to the advertisements, located across the country, for instance, in Washington, Tennessee, Ohio, and New Jersey.

    d. As of January 8, 2016, these advertisements for prostitution containing images of other females ("Female-1," "Female-2," "Female-3," and "Female-4") appeared on Backpage.

    e. In or about November 2015, one of the phone numbers ("Phone Number-1") posted in Backpage advertisements for Victim-1 was also posted in Backpage advertisements for a female referred to in the advertisement as "Kendell" ("Female-5").

    f. In or about November 2015, an email address ("Email Address-1") used to post a Backpage advertisement for Female-5 was also used to post Backpage advertisements for a female named "Kallie," or Victim-5.

    g. Backpage advertisements for Victim-5 have been posted with increased frequently in approximately the last two weeks—that is in or about late April and early May 2016, and these recent advertisements list the Target Cellphone on the advertisement as the

call back number. In terms of substance, for example, on or about May 10, 2016, a Backpage advertisement was posted that read:

> [Kissing Face Emoticon] [Eggplant Emoticon] [Water Droplets Emoticon] Kallie-Taste my [Honey Jar Emoticon] Goodies [Tongue Emoticon] [OK Hand Emoticon] [100 Emoticon] . . . Suffolk's favorite sin . . . Always discrete & No drama! Passionate and sensual . . . The perfect combination of Beauty, Brains and a sense of humor . . . I keep myself well manicured, hygienically correct & always classy! . . . Unrushed Sessions!!

The Backpage advertisement listed the Target Cellphone as the call number, and posted the following location: "Islip, Long Island, Patchogue, New York."

      h.    The Backpage advertisements for Victim-5 do not show Victim-5's face.

15.    Based on my conversations with other law enforcement officers and others, my training and experience, my involvement in this and other investigations, and my review of documents and records, I have learned the following, among other things:

      a.    In or about January 2016, an anonymous email was sent to the National Center for Missing and Exploited Children (the "Center"), referring the Center to a Backpage advertisement. The email was accompanied by the following note, in substance and in part: "This is a fake ad. When you go in you find a 14 year old girl in the motel room waiting for you. [T]he age and pics are false and they are using another girls pictures to traffic under aged girls. Please help stop this in my community be removing this ad and if possible the user. Thank you in advance[] for taking the time out and I know you will take the right actions." The Backpage advertisement referenced by the email read, in substance and in part:

> My name is *Kallie* I provide service you can't find anywhere else Sweet Seductive & Intelligent Always discrete & No drama! Passionate and sensual.. The perfect combination of Beauty, Brains and a sense of humor. I keep myself well manicured, hygienically correct & always classy! Private companionship

8

which is very exotic, fun & stimulating. Unrushed Sessions!!

The Backpage advertisement posted the following location: "Brookhaven, Long Island, Port jefferson new york." The Backpage advertisement also posted the Target Cellphone as the call number for the advertisement.

16.     Based on my review of the Backpage advertisements discussed above, among other things, I believe that FNU LNU, and others known and unknown, are engaging in the Subject Offenses in the Eastern District of New York, specifically, in or about Islip, Long Island, or Patchogue, New York.

17.     In my training and experience, I have learned that Onvoy, LLC-MN, is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

18. Based on my training and experience, I have learned that Onvoy, LLC-MN, can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Onvoy, LLC-MN's network or with such other reference points as may be reasonably available.

19. Based on my training and experience, I have learned that Onvoy, LLC-MN can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

21. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

22. I further request that the Court direct Onvoy, LLC-MN, to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Onvoy, LLC-M. I also request that the Court direct Onvoy, LLC-MN, to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Onvoy, LLC-MN's services, including by initiating a signal to determine the location of the Target Cell Phone on Onvoy, LLC-MN's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Onvoy, LLC-MN, for reasonable expenses incurred in furnishing such facilities or assistance.

23. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

24. The existence and scope of this ongoing criminal investigation are not publicly known. As a result, premature public disclosure of this affidavit or the requested Warrant and Order could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. Accordingly, I respectfully request that the Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of 180 days, and that the Warrant and Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.

25. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
BRIAN G. GANDER
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on May 12, 2016

S/ James Orenstein
_____
THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number (516) 218-7004 (the "Target Cell Phone"), whose wireless service provider is Onvoy, LLC-MN, a company headquartered at 10300 Sixth Avenue North, Plymouth MN 55441.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Onvoy, LLC-MN, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Onvoy, LLC-MN, Onvoy, LLC-MN, is required to disclose the Location Information to the government. In addition, Onvoy, LLC-MN, must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Onvoy, LLC-MN's services, including by initiating a signal to determine the location of the Target Cell Phone on Onvoy, LLC-MN's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Onvoy, LLC-MN, for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).